THOMAS D. ROBERTS
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Facsimile: 307-772-2907

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>ONE RUGER 70 RIFLE, SERIAL NO. 770-30126;<br>ONE ROSSI 62 SA RIFLE, SERIAL NO.<br>G391000; ONE RUGER SINGLE SIX<br>REVOLVER, SERIAL NO. 68-63480; ONE<br>COLT DETECTIVE SPECIAL REVOLVER,<br>SERIAL NO. 844687; and 751 ROUNDS OF<br>AMMUNITION IN SIX LOTS IDENTIFIED IN<br>ATTACHMENT A,<br><br>   Defendants. | No. **00CV 160** |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

United States of America, Plaintiff, through the United States Attorney, District of Wyoming, and Assistant United States Attorney Thomas D. Roberts, in a civil cause of forfeiture, alleges upon information and belief as stated hereafter.

  1.  This is a civil action *in rem* brought to enforce the civil forfeiture provision of 18 U.S.C. § 924(d).

Receipt # _____
Summons: _____ issued

2. The Court has jurisdiction pursuant to 18 U.S.C. § 922(g)(1), 18 U.S.C. § 922(g)(3), 19 U.S.C. § 1608, 28 U.S.C. §§ 1345, 1355, 1395, and 31 U.S.C. § 9703(o).

3. The Court has venue pursuant to 28 U.S.C. § 1395(b).

4. The defendant property is one Ruger 70 rifle, Serial No. 770-30126; one Rossi 62 SA rifle, Serial No. G391000; one Ruger Single Six revolver, Serial No. 68-63480; one Colt Detective Special revolver, Serial No. 844687; and 751 rounds of ammunition in six lots identified in Attachment A being firearms and ammunition as defined in 18 U.S.C. § 921(a)(17).

5. The defendant property was seized on land on September 21, 1999, in Sweetwater County, Wyoming, by the Bureau of Alcohol, Tobacco and Firearms, United States Department of the Treasury (ATF), and within the jurisdiction of this Court. The defendant property is currently in the custody of the Cheyenne Field Office, ATF, and is now and during the pendency of this action shall be located within the jurisdiction of this Court.

6. The facts giving rise to this seizure are as stated hereafter.

    a. ATF Special Agent Raponi (Raponi) was contacted on September 13, 1999, by Mike Cole, Wyoming Division of Criminal Investigations (DCI), Green River, Wyoming. Cole is employed as a Special Agent and Team Leader for DCI and is responsible for narcotics investigations in the southwest quadrant of the State of Wyoming.

    b. Cole stated he had assisted Detective Ken Lorimer, Rock Springs Police Department, and Special Agent Russ Schmidt, DCI, with a consensual search of the residence of

Charles "Chuck" Bassett and Marilyn June Griffin located at 5 Griffinsville Loop, Farson, Wyoming. Cole stated he had seen eight firearms inside the residence. He further stated the firearms were found in both the master bedroom and the spare bedroom, and none of the firearms were locked up. Cole also stated it was apparent to him both Bassett and Griffin were residents of the modular home at 5 Griffinsville Loop based upon both male and female clothing found in the master bedroom.

    c. Special Agent Raponi, on September 13, 1999, contacted Parole Officer John Jones, Colorado Parole, Grand Junction, Colorado. Jones stated he remembers supervising Charles Bassett, and believes Bassett's father lives in Wyoming, which may explain why he moved to Wyoming. Bassett was convicted of a felony for burglary and larceny in Colorado on September 25, 1991, and served a prison sentence in Colorado State Penitentiary. Jones said Bassett cannot possess firearms, and he (Jones) does not have any knowledge of Bassett's firearms rights being restored. Jones also stated he remembers being questioned by the FBI in Grand Junction, Colorado, concerning June Griffin in relation to illegal drug trafficking.

    d. Special Agent Raponi, on September 14, 1999, interviewed Detective Ken Lorimer, Rock Springs Police Department. Lorimer stated Charles Bassett and June Griffin were arrested on September 10, 1999, in Rock Springs subsequent to a traffic stop. Bassett was arrested for driving with a suspended Colorado driver's license, and Griffin was arrested for possession of marijuana. Lorimer stated he and Special Agent Russ Schmidt, DCI, interviewed Griffin at the Rock


Springs Police Station after Griffin was read her Miranda rights. Lorimer stated Griffin admitted the marijuana found in her purse during the traffic stop was hers. Lorimer also stated Griffin first indicated she had grown the marijuana herself, but then stated she received it from an unknown white male while at a friend's house. Griffin told officers she has smoked marijuana for a long time, and thinks everyone should have the right to smoke marijuana if they so desire. Detective Lorimer told Special Agent Raponi Griffin had given Lorimer and Special Agent Schmidt verbal consent to search her residence at 5 Griffinsville Loop, Farson, Wyoming, to see if there was any additional marijuana at her residence. Griffin also provided the keys to the residence.

    e.  Detective Lorimer stated he, Special Agent Schmidt, and Special Agent Mike Cole went to the residence of Griffin and Bassett at 5 Griffinsville Loop in Farson, Wyoming. The front door was permanently closed with a large sheet of plywood. They were able to enter, however, through the rear door of the off-white with green trim modular home. Lorimer stated, in addition to finding drug paraphernalia and small amounts of marijuana throughout the house (adding up to approximately 2 ounces), there were eight firearms found in the residence. Three handguns were found in the master bedroom, two of which were loaded. Four rifles and one shotgun were located in a glass cabinet in the spare bedroom. Lorimer stated there were no locking mechanisms on the cabinet, and none of the handguns in the master bedroom were locked or controlled in any manner. Lorimer stated he had seen both male and female clothing in the master bedroom and thus believed

both Marilyn Griffin and Charles Bassett resided at 5 Griffinsville Loop in Farson, Wyoming. Lorimer also provided a sketch of the residence and directions to the residence from Rock Springs, Wyoming.

f. Special Agent Raponi, on September 14, 1999, conferred with Postal Inspector Kent Powell, United States Postal Service, Cheyenne, Wyoming, who stated Charles Bassett receives mail at 5 Griffinsville Loop, Farson, Wyoming.

g. Special Agent Raponi, on September 14, 1999, placed a telephone call to the residence of 5 Griffinsville Loop, Farson, Wyoming. An answering machine answered and a recording of a female voice said, "...You've reached CJ's Tree Service and the residence of June and Chuck... ." The telephone number dialed was 307-273-5590.

h. ATF Special Agents and other officers, on September 21, 1999, executed a federal search warrant on the residence of Charles Bassett and June Griffin, 5 Griffinsville Loop, Farson, Wyoming. The search warrant was executed at approximately 12:50 p.m. Detective Ken Lorimer first attempted to make a telephone call to the residence; no one answered. Special Agent Raponi knocked and announced. Special Agent Raponi, after receiving no response, opened the door without force (the rear door was unlocked) and made entry. The residence was secured without incident, and no individuals were found to be home.

i. Special Agent Raponi, upon securing the residence and prior to the search, videotaped the interior of the residence. Agents and officers then began the search for evidentiary

items. The following items were found during the search in the identified locations. The items were photographed prior to being taken into custody.

<u>Southwest Bedroom</u> – This room appeared to be a spare bedroom. Two rifles were found in gun cases in the southwest corner of the room behind a wooden dresser. (Winchester model 70, .300 magnum bolt action rifle, serial number G1194879; Remington model 740, 30-06 caliber semi-automatic rifle, serial number 32805.

<u>Northwest Bedroom</u> – This room had a bed and men's clothing. Three documents with Charles Bassett's name were found on the top of the dresser against the northeast wall (one county court document, one State of Wyoming document, and one check stub). Three rifles, one shotgun, and ammunition were found in a gun cabinet in the northeast corner (Remington model 870, 12-gauge shotgun, serial number 63320V; Ruger model 70, .270 caliber bolt action rifle, serial number 770-30162; Winchester model 70, .222 caliber bolt action rifle, serial number G1318810; Rossi model 62 SA, .22 caliber pump action rifle, serial number G391000, with three rounds of ammunition; and a total of nine boxes of ammunition for .38 special, .270 caliber, and .22 caliber).

<u>Northeast Bedroom</u> – This room had a bed and women's clothing. Two handguns were found in the room. (One handgun - Ruger model single 6, .22 caliber revolver, serial number 68-63480, in a holster attached to a belt with three rounds of ammunition in the belt hanging in the closet on the west side of the room; and one handgun - Colt detective .38 special, 6 shot

revolver, serial number 844687, in a holster loaded with four rounds of ammunition was found inside the fourth drawer from the top of a clothes dresser in the northeast corner of the room.) Three documents with June Griffin's name were found on the top of the closet (two Texaco gas bills) and inside the jewelry box on top of the dresser against the east bedroom wall (personal check made payable to June Griffin).

Kitchen -- One box of ammunition (.44 magnum) was found on top of the refrigerator.

Rear Porch Entry -- One box of ammunition (.22 caliber) was found on a small table just inside the rear door.

j.  Special Agent Raponi, at the conclusion of the search, videotaped the interior of the residence upon exiting. The residence was secured at approximately 2:04 p.m. and the agents and officers left the premises. A copy of the warrant along with a list of items seized was left at the residence on the kitchen table.

k.  Special Agent Raponi and Detective Ed Thorburn, Rock Springs Police Department, on November 8, 1999, at approximately 1:00 p.m., conducted a non-custodial interview of Charles Bassett at the Rock Springs Police Department. Special Agent Raponi informed Bassett he was not under arrest and could terminate the interview at any time. Bassett stated he wanted to continue with the interview.

l.  Bassett stated he resides at the Cody Motel and the residence of Cliff Pedulla. Bassett could not remember the address of Pedulla's residence. Bassett also stated he lives at 5 Griffinsville Loop, Farson, Wyoming, with Marilyn June Griffin approximately 2-3 days per week. Bassett stated he has known Griffin for approximately fifteen years.

m.  Bassett stated he does not own or use any of the firearms found in the residence at 5 Griffinsville Loop in Farson, Wyoming. Bassett stated, "I can't have firearms because I'm a felon". Bassett served forty-seven months in the Colorado State Penitentiary for robbing a sporting goods store. Bassett stated he and a friend had stolen several firearms from the store. Bassett was convicted in 1991. He also stated Griffin locks all of the firearms in the house in a gun cabinet out of his control, because Griffin knew he (Bassett) was a convicted felon.

n.  Bassett stated he resided at 5 Griffinsville Loop on September 9, 1999, the evening before he and Griffin were arrested by the Rock Springs Police Department. Special Agent Raponi asked him why there were firearms and ammunition found in each of the three bedrooms, the kitchen and the main entryway into the house when Detective Ken Lorimer of the Rock Springs Police Department searched the residence upon obtaining consent from Griffin. Bassett stated after he had exited the residence that morning and entered his vehicle to leave, Griffin must have taken all of the firearms and ammunition out of the gun cabinet and placed them all throughout the residence.

o.  Bassett stated he stayed at the 5 Griffinsville Loop address several days between September 10, 1999 (date of the consent to search by Rock Springs Police Department) and September 21, 1999 (date of the federal search warrant). Special Agent Raponi again asked Bassett why on this date there were firearms and ammunition found in each of the three bedrooms, the kitchen and the main entryway in the residence. Bassett again stated Griffin must have removed all of the firearms and ammunition from the gun cabinet after he had left the residence and placed them throughout the residence.

p.  Bassett stated the Smith and Wesson .44 magnum revolver identified during the September 10, 1999, search, but not found in the September 21, 1999, search, belonged to Griffin's son, Lee Griffin. Bassett stated he had Griffin purchase the firearm at A-Z Pawn in Rock Springs, Wyoming, in May 1998 so he could give the firearm to Lee Griffin as a high school graduation present. Bassett said Griffin actually bought the firearm and filled out the paperwork. Bassett, however, provided Griffin with approximately $495.00 in cash. Bassett stated he got the money from work in the tree-cutting business. Lee Griffin was also with him and took the handgun home the day of the purchase. Lee Griffin has subsequently sold the handgun back to A-Z Pawn and purchased a rifle.

q.  Bassett stated he last used methamphetamine approximately two weeks prior to the interview. Bassett stated June Griffin, until just recently, was a regular user of marijuana. He stated, "She had been grouchy lately, because she hadn't been using marijuana." Bassett stated when

he and Griffin returned home after they were arrested on September 10, 1999, the first thing she (Griffin) said was that, "I want my dope back."

  r. Special Agent Raponi, on November 8, 1999, interviewed Marilyn June Griffin at her residence located at 5 Griffinsville Loop, Farson, Wyoming. Griffin invited Special Agent Raponi into the residence and yelled to the back of the house, "Chuck, the ATF guy is here." Charles Bassett responded, "What the f_ _ _ does he want?", and came to the kitchen where Special Agent Raponi and Griffin were going to talk. Bassett appeared agitated and said to Special Agent Raponi, "You can't be in this house, because I bet you have a gun, and I'm a felon – you can't be in here." Bassett then said he had talked to a lawyer after he spoke to Special Agent Raponi, and the lawyer told him he should not have said some of the things he said. The lawyer further advised Bassett not to talk to Special Agent Raponi again. Griffin told Bassett she wanted to talk to Special Agent Raponi. The interview of Griffin eventually took place outside the residence due to the constant interruption by Bassett.

  s. Griffin stated, with regard to the eight firearms found in the residence during the search pursuant to the federal warrant, the Ruger 270 was a hunting rifle she had bought new from Sunset Sports in Rock Springs, Wyoming, approximately fifteen years ago. The Rossi .22 rifle was given to her as a gift approximately ten years ago from an ex-boyfriend named Craig Newman. The Colt .38 special handgun was given to her as a gift approximately six or seven years ago by an

ex-boyfriend name Wendell Finstead. The Ruger .22 caliber handgun was a birthday gift from her daughter, Lisa Schmidt, approximately ten years ago.

  t. Griffin stated the other four firearms belonged to Bryan Dineen. Dineen was moving from Farson to Virginia, and asked Griffin to store his firearms for him in approximately August 1999 until he could come back to Farson to get them. Griffin said not all of the firearms would fit in the gun cabinet and that is why there were firearms found in the other rooms.

  u. Griffin stated she normally locks all the firearms in the gun cabinet in her son's room. Griffin said the key to the cabinet is kept in the same room under a coyote hide on the dresser. Griffin stated Bassett had resided at the house located at 5 Griffinsville Loop, Farson, Wyoming, since she began having a "sexual relationship with him" in approximately January 1999 to present. Griffin stated Bassett usually sleeps either in her room or on the couch in the living room. Griffin stated Bassett does find a place to stay in Rock Springs occasionally during the week, because he does not like the commute to Farson. Griffin stated Bassett does have access to the firearms. She however has not seen Bassett use the firearms.

  v. Griffin stated she does not agree with the federal firearms law, and if she "wants to go to a bar, bring home a man for the night, she should not have to check with the ATF to see if he's approved to be in her house."

  w. ATF Special Agent Ken Bray, on September 24, 1999, determined the defendant firearms involved were not manufactured in Wyoming. Special Agent Bray is currently

employed by ATF as a special Agent and has been so employed for the past ten years. His primary investigative efforts and responsibilities during the time of his employment have been in the area of firearms investigations. He has received general and specific instruction in the recognition and identification of firearms and their place of manufacture. Special Agent Bray examined the defendant firearms, and based upon information furnished, his experience, knowledge and research, it is his opinion the defendant firearms were not manufactured in the State of Wyoming. The firearms had traveled in and thereby affected interstate or foreign commerce prior to being in the possession of Charles Bassett or June Griffin in the State of Wyoming.

x.   Special Agent Raponi, on September 30, 1999, test fired the defendant property. Special Agent Raponi found each of the defendant firearms to function as designed.

y.   Special Agent Raponi, on December 21, 1999, compared a Colorado State Penitentiary photograph of Charles Bassett from his 1991 felony conviction to the Bassett who was interviewed in person by Special Agent Raponi on November 8, 1999. The individuals, pursuant to Special Agent Raponi's observation, appear to be the same person.

7.   The defendant property, by reason of the foregoing, were possessed in violation of 18 U.S.C. § 922(g)(1) and, therefore, constitute property which were involved in or used in a knowing violation of 18 U.S.C. § 922(g)(1). The defendant property is, therefore, subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 924(d).

8.  The defendant property, by reason of the foregoing, were possessed in violation of 18 U.S.C. § 922(g)(3) and, therefore, constitute property which were involved in or used in a knowing violation of 18 U.S.C. § 922(g)(3). The defendant property is, therefore, subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 924(d).

WHEREFORE, Plaintiff United States of America prays for the following judgment and relief.

1.  A warrant of arrest *in rem* issued to the Resident Agent in Charge, Cheyenne Field Office, Bureau of Alcohol, Tobacco and Firearms, 2120 Capitol Avenue, Room 3007, Cheyenne, Wyoming 82001, commanding him to arrest and retain custody of the defendant property, and to publish notice as required by Rule C(4), Supplemental Rules for Certain Admiralty and Maritime Claims, found at Title 28, United States Code.

2.  Notice be given to all persons claiming an interest in the defendant property, and all other interested parties to appear and show cause why the forfeiture should not be decreed.

3.  The Court order, adjudge, and decree the defendant property be condemned and forfeited to the United States for disposition according to law.

4.  The Court find reasonable cause for seizure of the defendant property and a certificate of reasonable cause be granted pursuant to 28 U.S.C. § 2465.

5.      The United States be granted such other and further relief as may be just and proper, together with the costs and disbursements of this action.

DATED this 21st day of August, 2000.

DAVID D. FREUDENTHAL
United States Attorney

By:  _____
THOMAS D. ROBERTS
Assistant United States Attorney

## **VERIFICATION**

STATE OF WYOMING      )
                      ) ss.
COUNTY OF LARAMIE     )

I, Daniel Raponi, of lawful age, being first duly sworn upon oath, depose and state I am a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, United States Department of the Treasury, and the case agent assigned the responsibility for this case. I have read the contents of the foregoing Complaint for Forfeiture *in rem*, and the statements contained therein are true and correct to the best of my knowledge and belief based upon my personal knowledge as well as the investigation of other agents of the Bureau of Alcohol, Tobacco and Firearms, United States Department of the Treasury, Wyoming State Division of Criminal Investigation, and the Rock Springs, Wyoming, Police Department.

_____
DANIEL RAPONI, Special Agent
Bureau of Alcohol, Tobacco and Firearms
United States Department of the Treasury
Cheyenne, Wyoming

The foregoing instrument was acknowledged before me by Daniel Raponi this 21st day of August, 2000.

Witness my hand and official seal.

_____
Notary Public

My commission expires: 6-20-2004

THOMAS D. ROBERTS
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Facsimile: 307-772-2907

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,                  )<br>                                            )<br>            Plaintiff,                     )     No.<br>                                            )<br>    v.                                      )<br>                                            )<br>ONE RUGER 70 RIFLE, SERIAL NO. 770-30126;  )<br>ONE ROSSI 62 SA RIFLE, SERIAL NO.           )<br>G391000; ONE RUGER SINGLE SIX               )<br>REVOLVER, SERIAL NO. 68-63480; ONE          )<br>COLT DETECTIVE SPECIAL REVOLVER,            )<br>SERIAL NO. 844687; and 751 ROUNDS OF        )<br>AMMUNITION IN SIX LOTS IDENTIFIED IN        )<br>ATTACHMENT A,                               )<br>                                            )<br>            Defendants.                    ) | |

## ATTACHMENT A

Three rounds Win-West .22 caliber

Three rounds Remington .22 caliber

Four rounds Remington .38 caliber

286 rounds Win-West .22 caliber

339 rounds Win-West .22 caliber

116 rounds Win-West .270 caliber